UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DIRECTV, LLC, a California limited liability company, | | |
| Plaintiff, | | No.  1:15-cv-02563-MHC |
| v. | | |
| MK HOSPITALITY, INC., a Georgia corporation; COMPTRA, INC., a Georgia corporation; MANISH KARAMSHI; LUZ RIOS, a/k/a JENNY RIOS; STAR SATELLITES & COMMUNICATIONS INC., a New York corporation; JOHNY THOMAS; SMITA SHERE; SEAN IAN DAVIS, d/b/a NICKA HOLDINGS; OPEN ORBIT CORP., a New York corporation; SUJIT GHOSH, a/k/a SAM GHOSH; UDAY SAHA, a/k/a DAVID SAHA; TOTAL ELECTRONICS, a foreign business entity; JERMAINE CURTIS, a foreign individual; ISLAND LINKS TV LLC, a Florida limited liability company; ROBERT ANDERSON; JOHN DOES 3 TO 10, United States individuals and entities; GAVIN CAREY, d/b/a ELECTRA; a foreign individual; ABBY MAJOR, a foreign individual; FNU JOHNSON, a foreign individual; DANIEL ALBURY, d/b/a ALBURY'S COMPUTER & SATELLITE REPAIRS, a foreign individual; TERRY STORR, d/b/a TCS ELECTRONICS, a foreign individual; and JOHN DOES 16 TO 25, individuals and entities of unknown nationality, | | |
| Defendants. | | |

**[PROPOSED] FIRST AMENDED COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff DIRECTV, LLC ("DIRECTV"), by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION

1.      Plaintiff DIRECTV brings this action to recover damages from and enjoin illegal acts and practices by defendants MK Hospitality, Inc., Comptra, Inc., Manish Karamshi, Luz Rios, Sean Ian Davis, Star Satellites & Communications Inc., Johny Thomas, Smita Shere, Open Orbit Corp., Sujit Ghosh, Uday Saha, Island Links TV, Robert Anderson, John Does 3 to 10 (collectively, "Authorized Dealer Defendants"), Total Electronics, Jermaine Curtis, Gavin Carey, Abby Major, FNU Johnson, Daniel Albury, Terry Storr and John Does 16 to 25 (collectively, "Foreign Seller Defendants") (all defendants, collectively, "Defendants").

2.      As set forth in greater detail below, Defendants are actively engaged in an unlawful scheme to sell DIRECTV satellite television programming services in the Bahamas and other countries where DIRECTV is not licensed to sell and does not authorize the sale of its services.  In furtherance of their scheme, Defendants are actively engaged in (a) creating fraudulent DIRECTV subscription

accounts, (b) activating DIRECTV satellite receiving equipment linked to those

fraudulent accounts, (c) exporting that activated equipment to the Bahamas and

other foreign countries, and (d) marketing, distributing, and selling purported

DIRECTV programming services in the Bahamas and other foreign countries.

3.      Defendants' actions violate the Federal Communications Act, 47

U.S.C. § 605, O.C.G.A. § 46-5-2, and state common law.

4.      Plaintiff DIRECTV brings this action to restrain these illegal acts

and practices, and to recover damages and other relief described in this First

Amended Complaint.

## PARTIES

5.      Plaintiff DIRECTV is a limited liability company duly organized

under the laws of the state of California.

6.      Defendant MK Hospitality, Inc. ("MK Hospitality") is a Georgia

corporation with its principal place of business in Kennesaw, Georgia.  MK

Hospitality is a former Authorized DIRECTV Dealer.  Prior to its termination in

October 2013, MK Hospitality was authorized to solicit subscriptions

for DIRECTV television programming services from qualifying residential and

commercial customers in the United States.  In connection therewith, MK

Hospitality entered into multiple agreements with DIRECTV, including a

Commercial Dealer Agreement, a Commercial Customer Referral Agreement, an

Independent Retailer Agreement and a SMATV Affiliate Agreement.

7.      Defendant Comptra, Inc. ("Comptra") is a Georgia corporation with

its principal place of business in Stockbridge, Georgia.  Comptra is a former

Authorized DIRECTV Dealer.  Prior to its termination in September 2013,

Comptra was authorized to solicit subscriptions for DIRECTV television

programming services from qualifying residential and commercial customers in the

United States.  In connection therewith, Comptra entered into multiple agreements

with DIRECTV, including a Commercial Dealer Agreement, a Commercial

Customer Referral Agreement, an Independent Retailer Agreement and a SMATV

Affiliate Agreement.

8.      Defendant Manish Karamshi ("Karamshi") is a resident of Kennesaw,

Georgia.  At all times relevant herein, Karamshi has been an officer, director

and/or shareholder of corporate defendants MK Hospitality and Comptra.  Upon

information and belief, Karamshi personally participated in the wrongful conduct

alleged in this First Amended Complaint, had the right and ability to supervise,

direct and control the wrongful conduct of others, and derived a direct financial

benefit from that wrongful conduct.

4

9.      Defendant Luz Rios ("Rios"), also known as "Jenny Rios," is a resident of Kennesaw, Georgia.  At all times relevant herein, Rios has been an officer, director and/or shareholder of corporate defendant MK Hospitality.  Upon information and belief, Rios personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

10.     Defendant Sean Ian Davis ("Davis"), doing business as "Nicka Holdings," is a resident of Lithonia, Georgia.  Upon information and belief, Davis personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

11.     Defendant Star Satellites & Communications Inc. ("Star Satellites") is a New York corporation doing business in Georgia.  Star Satellites is a former Authorized DIRECTV Dealer.  Prior to its termination in July 2013, Star Satellites was permitted to solicit subscriptions for DIRECTV television programming services from qualifying residential and commercial customers in the United States.  In connection therewith, Star Satellites entered into multiple agreements

5

with DIRECTV, including an Independent Retailer Agreement and a Commercial Dealer Agreement.

12.     Defendant Johny Thomas ("Thomas") is a resident of Flushing, New York, and engaged in business in Georgia from which the claims in this First Amended Complaint arise.  Upon information and belief, Thomas personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

13.     Defendant Smita Shere ("Shere") is a resident of Flushing, New York, and engaged in business in Georgia from which the claims in this First Amended Complaint arise.  At all times relevant herein, Shere has been an officer, director and/or shareholder of corporate defendant Star Satellites.  Upon information and belief, Shere personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

14.     Defendant Open Orbit Corp. ("Open Orbit") is a New York corporation doing business in Georgia.  Open Orbit is a former Authorized DIRECTV Dealer.  Prior to its termination in May 2013, Open Orbit was permitted

6

to solicit subscriptions for DIRECTV television programming services from qualifying residential and commercial customers in the United States.  In connection therewith, Open Orbit entered into multiple agreements with DIRECTV, including a Commercial Dealer Agreement, a Customer Referral Agreement, an Independent Retailer Agreement and a SMATV Affiliate Agreement.

15.    Defendant Sujit Ghosh ("Ghosh"), also known as "Sam Ghosh," is a resident of Eastchester, New York, and engaged in business in Georgia from which the claims in this First Amended Complaint arise.  At all times relevant herein, Ghosh has been an officer, director and/or shareholder of corporate defendant Open Orbit.  Upon information and belief, Ghosh personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

16.    Defendant Uday Saha ("Saha"), also known as "David Saha," is a resident of Bayside, New York, and engaged in business in Georgia from which the claims in this First Amended Complaint arise.  At all times relevant herein, Saha has been an officer, director and/or shareholder of corporate defendant Open Orbit.  Upon information and belief, Saha personally participated in the wrongful

conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

17.    Defendant Total Electronics ("Total Electronics") is a foreign company of unknown authorization with its principal place of business in Nassau, Bahamas, and doing business in the United States, including the state of Georgia.

18.    Defendant Jermaine Curtis ("Curtis") is a citizen of unknown nationality residing in Nassau, Bahamas, and doing business in the United States, including the state of Georgia.  At all times relevant herein, Curtis has been an officer, director and/or shareholder of defendant Total Electronics.  Upon information and belief, Curtis personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

19.    Defendant Island Links TV LLC ("Island Links TV") is a Florida limited liability company doing business in the state of Georgia.

20.    Defendant Robert Anderson ("Anderson") is a resident of Pembroke Pines, Florida, and engaged in business in Georgia from which the claims in this First Amended Complaint arise.  At all times relevant herein, Anderson has been

an officer, director and/or shareholder of defendant Island Links TV.  Upon

information and belief, Anderson personally participated in the wrongful conduct

alleged in this First Amended Complaint, had the right and ability to supervise,

direct and control the wrongful conduct of others, and derived a direct financial

benefit from that wrongful conduct.

21.     Defendants John Does 3 to 10 ("United States Does") are individuals

and entities residing in or organized under the laws of the United States whose true

identities are currently unknown to DIRECTV.  Upon information and belief, the

United States Does assisted, aided and abetted defendants MK Hospitality,

Comptra, Karamshi, Rios, Davis, Star Satellite, Thomas, Shere, Open Orbit,

Ghosh, Saha, Island Links TV and Anderson in (a) creating fraudulent DIRECTV

subscription accounts, (b) activating DIRECTV satellite receiving equipment

linked to those fraudulent accounts, (c) exporting that activated equipment to the

Bahamas and other foreign countries, and (d) engaging in the unlawful acts and

practices alleged in this First Amended Complaint.

22.     Defendant Gavin Carey ("Carey"), doing business as "Electra," is a

citizen of unknown nationality residing in Nassau, Bahamas, and doing business

in the United States, including the state of Georgia.  Upon information and belief,

Carey personally participated in the wrongful conduct alleged in this First

Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

23.     Defendant Abby Major ("Major") is a citizen of unknown nationality residing in Nassau, Bahamas, and doing business in the United States, including the state of Georgia.  Upon information and belief, Major personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

24.     Defendant FNU Johnson ("Johnson") is a citizen of unknown nationality residing in Nassau, Bahamas, and doing business in the United States, including the state of Georgia.  Upon information and belief, Johnson personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

25.     Defendant Daniel Albury ("Albury"), doing business as "Albury's Computer & Satellite Repairs," is a citizen of unknown nationality residing in Nassau, Bahamas, and doing business in the United States, including the state of Georgia.  Upon information and belief, Albury personally participated in the

10

wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

26.    Defendant Terry Storr ("Storr"), doing business as "TCS Electronics," is a citizen of unknown nationality residing in Nassau, Bahamas, and doing business in the United States, including the state of Georgia.  Upon information and belief, Curtis personally participated in the wrongful conduct alleged in this First Amended Complaint, had the right and ability to supervise, direct and control the wrongful conduct of others, and derived a direct financial benefit from that wrongful conduct.

27.    Defendants John Does 16 to 25 ("Foreign Does") are individuals and entities of foreign citizenship or authorization whose true identities are currently unknown to DIRECTV.  Upon information and belief, the Foreign Does import, market, distribute and sell DIRECTV equipment and services in the Bahamas and other foreign countries, without authorization from DIRECTV, and have engaged in the illegal acts and practices alleged in this First Amended Complaint.

## JURISDICTION AND VENUE

28.     This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, because this action involves claims brought under federal law:  the Federal Communications Act, 47 U.S.C. § 605.

29.     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over DIRECTV's claims arising under state law because those claims are so related to DIRECTV's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

30.     Defendants are subject to personal jurisdiction in this Court because they are located in Georgia, have committed acts in furtherance of their conspiracy to defraud DIRECTV in Georgia and/or have purposefully aimed and directed at Georgia their activities, from which the claims asserted in this First Amended Complaint arise.

31.     Additionally, personal jurisdiction is proper in Georgia as to those defendants who do not reside or have their principal place of business in Georgia, pursuant to the Georgia Long Arm Statute, O.C.G.A. § 9-10-91(1) & (2), because those defendants have transacted business within the state of Georgia and/or have committed tortious acts or omissions within the state of Georgia, from which the claims asserted in this First Amended Complaint arise.

12

32.     Additionally, pursuant to Fed. R. Civ. P. 4(k)(2), personal jurisdiction is proper as to any defendant who is not subject to jurisdiction in any state's courts of general jurisdiction, and the exercise of jurisdiction is consistent with the United States Constitution and laws.

33.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to these claims occurred here. Alternatively, venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(3), because Defendants are subject to personal jurisdiction in Georgia for the reasons set forth above.

34.     Venue is proper in the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 90 and Local Rule 3.1.B.(1)(a).

## FACTUAL BACKGROUND

35.     DIRECTV is the nation's leading direct broadcast satellite system, delivering hundreds of channels of digital entertainment and informational programming to more than 20 million residences and businesses equipped with specialized DIRECTV satellite receiving equipment.

36.     DIRECTV programming currently includes major cable networks, major studio movies, local broadcast stations in most markets, special event programming offered on a pay-per-view basis, and a variety of other sports and

special interest programs and packages.  In addition to original programming created by DIRECTV, DIRECTV contracts and pays for the right to distribute programming and entertainment content to its subscribers, and holds license rights under the Copyright Act to exhibit the programming to its subscribers.

37.     DIRECTV operates broadcast centers in California and Colorado that are used to distribute its programming to DIRECTV subscribers.  At the broadcast centers and local collection facilities, DIRECTV digitizes and compresses its programming into a signal that is encrypted (electronically scrambled) to prevent unauthorized viewing of the programming.  DIRECTV then transmits the encrypted signal to satellites located in stationary orbits approximately 22,300 miles above the Earth.

38.     The satellites relay the encrypted signal back to Earth, where it can be received by subscribers equipped with DIRECTV receiving equipment.  The signal is received by the subscriber's satellite receiving equipment.  That equipment consists of a small satellite dish, an Integrated Receiver/Decoder (sometimes referred to as a "Receiver"), and a DIRECTV Access Card that is necessary to operate the Receiver.

39.     The Receiver is a box approximately the size of a DVD player and acts like a computer to process and decrypt the incoming signal using the credit-

14

card-sized DIRECTV Access Card that is loaded through a slot on the front or back of the Receiver.

40.     DIRECTV Receivers and Access Cards are assigned unique serial numbers, and those numbers are used by DIRECTV to activate the satellite receiving equipment and to ensure that the equipment decrypts DIRECTV programming in accordance with the subscriber's authorized subscription package and pay-per-view purchases.

41.     The activation process involves linking each Access Card to a valid DIRECTV subscription account.  Upon activation by DIRECTV, software is transmitted via satellite to the subscriber's Receiver and Access Card.

42.     DIRECTV distributes the satellite receiving equipment, including Receivers and Access Cards, to subscribers for the sole purpose of enabling legally authorized access to DIRECTV television programming.  The satellite receiving equipment was initially distributed by sale to subscribers; some equipment was later distributed by lease from DIRECTV to subscribers.  Under both methods of distribution, DIRECTV pays subsidies to the manufacturers of the equipment, which DIRECTV seeks to recoup through subscription fees and other payments from subscribers.  Subscribers using leased satellite receiving equipment are

legally obligated to return the equipment upon cancellation or termination of their subscription accounts, as set forth in the DIRECTV equipment lease agreement.

43.     DIRECTV operates a Direct Broadcast Satellite Service under part 100 of Title 47 of the Code of Federal Regulations, pursuant to licenses issued by the Federal Communications Commission ("FCC") and other government agencies.

## A.     DIRECTV Subscriber Agreements

44.     DIRECTV provides television programming services to qualifying customers in the United States.  By way of example, a business wishing to subscribe to receive DIRECTV programming is required to create a commercial subscription account with DIRECTV and agree to the terms of the Commercial Customer Agreement or, prior to June 24, 2014, the Commercial Viewing Agreement.

45.     The Commercial Customer Agreement and the Commercial Viewing Agreement govern viewing and use of DIRECTV programming by commercial subscribers.  Those agreements require a subscriber to identify truthfully the address where the DIRECTV satellite receiving equipment will be located and where the programming will be viewed ("Service Address").  Commercial Customer Agreement § 3; Commercial Viewing Agreement § 15.  Additionally,

16

those agreements prohibit any viewing or use of that programming at a location

other than the Service Address listed on the subscriber's account.  Commercial

Customer Agreement §§ 1(e) & 1(g); Commercial Viewing Agreement §§ 6 & 11.

46.    The Commercial Customer Agreement and the Commercial Viewing

Agreement strictly prohibit reception or viewing of DIRECTV programming

outside the United States:

> [DIRECTV] provide[s] digital satellite entertainment programming
> and services (referred to collectively as "Service") to commercial
> establishments located within the United States.  ***We do not provide,
> and you may not receive or use, Service at an address or location
> outside the United States.***

Commercial Customer Agreement, Page 1 (emphasis supplied).

47.    DIRECTV also publishes warnings on its website advising subscribers

and prospective subscribers that the company does not sell its services outside the

United States:

> Can I get DIRECTV outside the U.S.?
> ***We are legally prohibited from transmitting the DIRECTV signal outside
> the United States. . . .***

https://support.directv.com/app/answers/detail/a_id/1924/kw/service%20address%

20outside%20the%20United%20States (July 16, 2015) (emphasis supplied).

48.    These terms and conditions are required by and/or consistent with

DIRECTV's license agreements with the owners of the programming distributed

by DIRECTV, and with DIRECTV's broadcast authority from the FCC and other government agencies.

**B.**     **DIRECTV Authorized Dealer Agreements**

49.     Subscribers can obtain DIRECTV equipment and services directly from DIRECTV or through a network of independent dealers that, by contract, are authorized by DIRECTV to sell or lease its satellite receiving equipment and solicit orders for its television programming service ("Authorized Dealers").  For the time period covered by this First Amended Complaint, authorization to solicit commercial subscription accounts was governed by the Commercial Dealer Agreement and the Commercial Customer Referral Agreement.

50.     Authorized Dealers are compensated by DIRECTV, in part, on a commission basis for subscription accounts they originate.  By way of example, Authorized Dealers are paid a one-time payment upon activation of each qualifying commercial account created by them, and monthly continuing service fee so long as the account remains active.

51.     Prior to being terminated by DIRECTV, corporate defendants MK Hospitality, Comptra, Star Satellites and Open Orbit were Authorized DIRECTV Dealers.  As Authorized Dealers, those defendants were authorized, *inter alia*, to solicit commercial subscription accounts.  In connection therewith, MK

Hospitality, Comptra, Star Satellites and Open Orbit entered into Commercial

Dealer Agreements with DIRECTV.

52.     Defendants MK Hospitality and Comptra also received authorization

from DIRECTV to act as Commercial Customer Referral contractors.  As

Commercial Customer Referral contractors, MK Hospitality and Comptra were

authorized to solicit commercial accounts nationwide.  In connection therewith,

MK Hospitality and Comptra entered into Commercial Customer Referral

Agreements with DIRECTV.

53.     The Commercial Dealer Agreements and the Commercial Customer

Referral Agreements were executed by individual defendants Karamshi, Rios,

Shere and Ghosh as authorized representatives for corporate defendants MK

Hospitality, Comptra, Star Satellites and Open Orbit.  Defendants Karamshi, Rios,

Thomas, Shere, Davis, Ghosh, Saha and United States Does, acting as employees

or agents of corporate defendants MK Hospitality, Comptra, Star Satellites and

Open Orbit, acted as Authorized DIRECTV Dealers with purported authority

conferred by the Commercial Dealer Agreements and the Commercial Customer

Referral Agreements.

54.     By executing the Commercial Dealer Agreement (MK Hospitality,

Comptra, Star Satellites and Open Orbit) and the Commercial Customer Referral

19

Agreement (MK Hospitality and Comptra), the Authorized Dealer Defendants acknowledged and agreed to submit accounts only for qualifying commercial establishments.  Commercial Dealer Agreement § 1.2(c); Commercial Customer Referral Agreement § 5.1.

55.    By executing the Commercial Dealer Agreement, the Authorized Dealer Defendants acknowledged and agreed that they would personally visit each establishment and verify the accuracy of the account information.  Commercial Dealer Agreement § 2.2(d).

56.    By executing the Commercial Dealer Agreement and the Commercial Customer Referral Agreement, the Authorized Dealer Defendants acknowledged and agreed that they would sell DIRECTV television programming services only within the "Territory," which was defined as the "United States and its territorial waters."  Commercial Dealer Agreement § 1.2(b) (authorizing the Authorized Dealer Defendants to market, promote and advertise the sale of DIRECTV programming at qualifying commercial establishments "in the Territory") & Schedule 1.1, § 1.12 (defining "Territory" to mean "the United States and its territorial waters"); Commercial Customer Referral Agreement §§ 1.1, 2.3 & 2.9.

57.    The Authorized Dealer Defendants acted as Authorized Dealers until they were terminated by DIRECTV.

C.   **Mirroring of DIRECTV Programming**

58.   Subscribers can choose from various levels and types of DIRECTV programming packages, for which they are charged a periodic subscription fee, usually monthly.  Examples of the base residential programming packages available include Choice™ (150 or more digital channels at $70.99 per month), Xtra (205 or more digital channels for $77.99) and Premier (285 or more digital channels at $136.99 per month).

59.   Subscribers can also choose special sports packages (including the NFL Sunday Ticket™, the NBA League Pass, MLB Extra Innings®, and NHL Center Ice®) and ethnic programming packages (including Spanish, Russian and Chinese language programming), which are available for additional fees.  Special events programming (such as boxing matches), premier movies, and adult and other special programming can be purchased on a pay-per-view basis by using an on-screen menu and a hand-held remote, or by contacting DIRECTV by telephone or online.

60.   As an accommodation to its subscribers, DIRECTV will "mirror" the level of services authorized for the first Receiver on an account for additional Receivers so that programming can be viewed on multiple televisions located at the business.  (A dedicated Receiver is generally required for each television

21

receiving DIRECTV programming.)  DIRECTV charges reduced fees for each

mirrored Receiver, ranging from $1.00 to $6.00 for each additional Receiver on

commercial accounts created after June 2012.

61.    To be eligible for mirroring, and to receive the reduced mirroring fees,

DIRECTV requires that each Receiver be physically located at the Service Address

listed on the account.  Commercial Customer Agreement § 3; Commercial

Viewing Agreement § 15.

## DEFENDANTS' WRONGFUL CONDUCT

62.    Beginning at a time unknown and continuing to the present,

Defendants have engaged in repeated illegal and improper acts and practices for

the purpose of fraudulently obtaining DIRECTV satellite television programming

and distributing that programming to individuals and businesses in the Bahamas

and, upon information and belief, other countries where DIRECTV is not licensed

to sell and does not authorize the sale of its services.

63.    The unlawful conduct by Defendants, in furtherance of their scheme

to defraud, includes but is not limited to the following:

a.    Account Fraud – Defendants have created and, upon

information and belief, are continuing to create commercial subscription

accounts for purported qualifying business establishments in the United

States.  In truth and fact, Defendants used false subscriber names, false Service Addresses and other false information to create the commercial subscription accounts, and used those fraudulent accounts to activate DIRECTV satellite receiving equipment intended by Defendants for use in the Bahamas and other countries not authorized by DIRECTV.

b.     <u>Mirroring Fraud</u> – Defendants have activated and, upon information and belief, are continuing to activate multiple DIRECTV Receivers and multiple DIRECTV Access Cards as "mirrored" equipment on the fraudulent commercial subscription accounts created by them.  In truth and fact, Defendants have falsely represented the location and use of the "mirrored" equipment, and have fraudulently activated that equipment for use in the Bahamas and, upon information and belief, other countries not authorized by DIRECTV.

c.     <u>Gray Market Fraud</u> – Defendants have received and assisted others in receiving DIRECTV television programming in the Bahamas and other countries not authorized by DIRECTV.  The unlawful conduct by Defendants, in furtherance of their scheme to defraud, includes but is not limited to the following:

(i)      Defendants have exported and, upon information and belief, are continuing to export activated DIRECTV satellite receiving equipment to the Bahamas and other countries not authorized by DIRECTV, in violation of United States law and DIRECTV's dealer and subscriber agreements.

(ii)     Defendants have installed and, upon information and belief, are continuing to install activated DIRECTV satellite receiving equipment at residences and businesses in the Bahamas and other countries not authorized by DIRECTV, in violation of United States law and DIRECTV's dealer and subscriber agreements.

(iii)    Defendants have sold and, upon information and belief, are continuing to sell purported DIRECTV television programming services in the Bahamas and other countries not authorized by DIRECTV, in violation of United States law and DIRECTV's dealer and subscriber agreements.

64.    The Authorized Dealer Defendants knew that DIRECTV did not authorize the sale of its services outside the United States.  As Authorized Dealers for DIRECTV, the Authorized Dealer Defendants were permitted to solicit

subscriptions for DIRECTV television programming services from qualifying customers in the United States and nowhere else.

65.     The Commercial Dealer Agreements executed by the Authorized Dealer Defendants prohibited solicitation of subscription accounts outside the United States.  Commercial Dealer Agreement § 1.2(b) & Schedule 1.1, § 1.12. That geographic restriction was also included in the Commercial Customer Referral Agreement executed by MK Hospitality and Comptra.  Commercial Customer Referral Agreement §§ 1.1, 2.3 & 2.9.

66.     The Authorized Dealer Defendants abused their position of trust as Authorized Dealers to create fraudulent subscription accounts and used those accounts to activate DIRECTV satellite receiving equipment for use outside the United States.

67.     By way of example, preliminary investigation by DIRECTV has identified 122 commercial subscription accounts that were created by the Authorized Dealer Defendants with false Service Addresses and other subscriber information.  Those accounts were used by the Authorized Dealer Defendants to activate at least 2,564 Receivers for DIRECTV programming service.  The Authorized Dealer Defendants exported or delivered the activated Receivers to the Foreign Seller Defendants (Total Electronics, Curtis, Carey, Major, Johnson,

Albury, Storr and Foreign Does 16 to 25) and others.  In turn, the Foreign Seller

Defendants and others distributed and sold the activated Receivers to individuals

and businesses in the Bahamas and other countries where DIRECTV is not

licensed to sell and does not authorize the sale of its television programming

services.

68.    The Authorized Dealer Defendants listed false Service Addresses in

New York and Florida on most of the fraudulent subscription accounts they

created.  Additionally, the Authorized Dealer Defendants directed that most

invoices and other billing information for DIRECTV services be sent to addresses

in Stockbridge and Kennesaw, Georgia and Flushing, New York that, upon

information and belief, are or were controlled by them.

69.    The Authorized Dealer Defendants activated at least 2,564 Receivers

on the fraudulent accounts created by MK Hospitality, Comptra, Star Satellites and

Open Orbit, and exported or delivered those activated Receivers to the Foreign

Seller Defendants and others in the Bahamas and other countries, as follows:

a.    Satellite Bahamas Ltd. – Beginning in at least January 2013,

corporate defendants MK Hospitality, Star Satellites and Open Orbit,

through the acts of individual defendants Karamshi, Rios, Thomas, Shere,

Davis, Ghosh, Saha and others, created fraudulent accounts for and sold

activated Receivers to Satellite Bahamas Ltd., which was engaged in the sale of DIRECTV equipment and programming in the Bahamas. Individual defendants Karamshi, Rios and Davis personally participated in the illegal sales to Satellite Bahamas and met with representatives of that company in Kennesaw, Georgia.

      b.    <u>Curtis & Total Electronics</u> – Beginning in at least August 2012, the Authorized Dealer Defendants created fraudulent accounts for and sold activated Receivers to defendants Curtis and Total Electronics, who are engaged in the sale of DIRECTV equipment and programming in the Bahamas. By way of example, individual defendant Rios was listed on at least one of the subscription accounts created and used by corporate defendant Star Satellites to activate Receivers for use in the Bahamas. Receivers activated by the Authorized Dealer Defendants and sold to defendants Curtis and Total Electronics include Receivers that are owned by and subject to leases from DIRECTV. Upon information and belief, the leased Receivers were exported to and are currently in the possession of Curtis and Total Electronics and their customers in the Bahamas.

      c.    <u>Anderson & Island Links TV</u> – On or about December 17, 2012, following an investigation of grey market fraud and other misconduct,

DIRECTV served cease and desist letters at defendant Anderson's business and residence. At the time, Anderson was conducting business under the name "SatServ." Notwithstanding that notice, between May and September 2014, Anderson and his company, defendant Island Links TV, created fraudulent accounts for and sold activated Receivers to defendant Albury in Nassau, Bahamas. Upon information and belief, the Receivers were exported to and are currently in the possession of Albury and his customers in the Bahamas.

      d.    <u>Foreign Seller Defendants</u> – Beginning at a time unknown, the Authorized Dealer Defendants created fraudulent accounts for and sold activated Receivers to Carey, Major, Johnson, Albury, Storr and Foreign Does 16 to 25, which are individuals and businesses engaged in the sale of DIRECTV equipment and programming in the Bahamas and other countries not authorized by DIRECTV.

      e.    <u>Leased Receivers</u> – Many of the Receivers activated, distributed and/or sold by the Authorized Dealer Defendants consisted of equipment that was made available only by lease from DIRECTV. Upon information and belief, the leased Receivers that were activated by Star Satellites, Thomas and Shere were exported to and are currently in the

possession of the Foreign Seller Defendants and their customers in the Bahamas and other countries.

70.    Defendants have created and, upon information and belief, are continuing to create subscription accounts using false subscriber names, false Service Addresses and other false information, and have used those fraudulent accounts to activate DIRECTV satellite receiving equipment for use in the Bahamas and other foreign countries where DIRECTV is not licensed to sell and does not authorize the sale of its services.  By submitting the falsified subscriber information, Defendants acted with intent to deceive DIRECTV, and did deceive DIRECTV, in (a) approving the subscription accounts submitted by them, and (b) activating the satellite receiving equipment they listed on those accounts.

71.    Defendants have activated an unknown number of Receivers that are mirrored to fraudulent subscription accounts created by them.  In so doing, Defendants have taken improper advantage of the reduced rates charged by DIRECTV for mirrored Receivers and have unjustly enriched themselves by selling those Receivers and/or programming services to Defendants' customers.

72.    In furtherance of their scheme to defraud, and to conceal their wrongful conduct from DIRECTV, Defendants have made and continue to make periodic payments to maintain programming service to the fraudulent accounts

created by them.  These payments were made using financial institutions in the

United States, including those located in the state of Georgia.

73.     By submitting false subscriber information and engaging in the other

wrongful acts described herein, Defendants actively attempted to conceal and did

successfully conceal their scheme to defraud from DIRECTV.  DIRECTV has

acted with reasonable diligence in discovering Defendants' scheme and in

investigating the facts underlying its claims against Defendants, including in the

manner discussed in this First Amended Complaint.  The harm to DIRECTV

caused by Defendants is continuing.

74.     As a result of these illegal and improper acts, practices and schemes,

Defendants have assisted, aided and abetted the illegal and unauthorized reception

and decryption of DIRECTV's encrypted satellite transmission by persons not

authorized to receive such programming.  Defendants have caused and are

continuing to cause significant harm to DIRECTV that includes but is not limited

to the following:

a.     Defrauding DIRECTV of television programming services it

provided in connection with the fraudulent accounts created by Defendants.

b.      Defrauding DIRECTV of compensation and other valuable

consideration paid to defendants MK Hospitality and Star Satellites in

connection with the fraudulent accounts.

c.      Defrauding DIRECTV of installation fees and other sums

DIRECTV paid in connection with the fraudulent accounts.

d.      Depriving DIRECTV of unpaid balances on fraudulent

accounts created by Defendants.

e.      Converting to Defendants' use and the use of Defendants'

customers in the Bahamas and elsewhere DIRECTV television

programming services.

f.      Converting to Defendants' use and the use of Defendants'

customers in the Bahamas and elsewhere leased satellite receiving

equipment that belongs to and is the rightful property of DIRECTV.

g.      Defrauding DIRECTV of equipment subsidies paid by

DIRECTV to the manufacturers of leased equipment wrongfully converted

by Defendants.

h.      Interfering with DIRECTV's regulatory relations with United

States and foreign government agencies in connection with Defendants'

sale of purported DIRECTV programming in countries where DIRECTV is not licensed or authorized to sell its services.

i.      Interfering with DIRECTV's license agreements with the owners and/or licensors of the programming distributed by DIRECTV in connection with Defendants' sale of purported DIRECTV programming in countries where DIRECTV is not licensed or authorized to distribute that programming.

j.      Interfering with DIRECTV's contractual and prospective business relations with former, current and prospective subscribers.

k.      Compromising DIRECTV's subscriber authorization process, accounting and other procedures and controls in connection with the fraudulent accounts created by Defendants.

l.      Unjustly enriching Defendants at DIRECTV's expense.

75.    Defendants' violations are willful and deliberate, and have caused and continue to cause significant and irreparable harm to DIRECTV.  DIRECTV brings this action to recover damages for the harm it has sustained, to impose a constructive trust upon Defendants' illegal profits and assets purchased with those profits, and to obtain injunctive relief prohibiting Defendants' further violations.

## **FIRST CAUSE OF ACTION**

### **(Receiving and Assisting Others in Receiving Satellite Signals in Violation of 47 U.S.C. § 605(a) – All Defendants)**

76.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

77.     By creating subscription accounts with false information and for improper purposes, activating DIRECTV satellite receiving equipment linked to those fraudulent accounts, exporting that activated equipment to the Bahamas, and marketing, distributing and selling purported DIRECTV programming in the Bahamas, Defendants have knowingly and intentionally received and assisted others and continue to knowingly receive and assist others in receiving DIRECTV's encrypted satellite transmissions of television programming without authorization by DIRECTV, in violation of 47 U.S.C. § 605(a).

78.     By these same acts, Defendants divulged and/or published DIRECTV's encrypted satellite transmissions through channels of transmission or reception not authorized by DIRECTV, in violation of 47 U.S.C. § 605(a).

79.     DIRECTV is a "person aggrieved" within the meaning of 47 U.S.C. § 605(d)(6), and is authorized to recover damages and other relief in a civil action pursuant to 47 U.S.C. § 605(e)(3).

33

80.    Defendants' violations have injured and continue to cause injury to DIRECTV, including, by way of example, obtaining DIRECTV television programming services by false pretenses, causing DIRECTV to pay commissions and other consideration to Authorized Dealers under false pretenses, causing DIRECTV to pay installation fees and other sums under false pretenses, converting to Defendants' use and the use of Defendants' customers programming services and leased equipment that rightfully belongs to DIRECTV, compromising DIRECTV's subscriber and accounting systems, and interfering with DIRECTV's regulatory obligations and contractual relationships.

81.    Defendants have violated and continue to violate 47 U.S.C. § 605(a) willfully and for purposes of direct or indirect commercial advantage or private financial gain.

82.    Defendants knew or should have known that receiving or assisting other persons in receiving DIRECTV's encrypted satellite transmissions of television programming without authorization by DIRECTV was and is illegal and prohibited.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.  Unless restrained by this Court, Defendants will continue to violate 47 U.S.C. § 605(a).

## SECOND CAUSE OF ACTION

### (Avoiding or Attempting to Avoid Payment for Telecommunication Services in Violation of O.C.G.A. § 46-5-2 – All Defendants)

83.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

84.     By creating subscription accounts with false information and for improper purposes, activating DIRECTV satellite receiving equipment linked to those fraudulent accounts, exporting that activated equipment to the Bahamas, and marketing, distributing and selling purported DIRECTV programming in the Bahamas, Defendants have knowingly and intentionally avoided and continue to knowingly and intentionally avoid the lawful charges, in whole or in part, for DIRECTV telecommunication services, and have knowingly assisted others and continue to knowingly assist others to avoid lawful charges for DIRECTV telecommunication services, in violation of O.C.G.A. § 46-5-2.

85.     DIRECTV owns and operates a satellite distribution network through which it provides telecommunication services and is, therefore, a "telecommunication service provider" within the meaning of O.C.G.A. § 46-5-3(a) (2).

86.     Defendants' violations have injured and continue to injure DIRECTV, including by way of example, obtaining DIRECTV programming services by false

pretenses, causing DIRECTV to pay commissions and other consideration to

Authorized Dealers under false pretenses, converting to Defendants' own use and

the use of Defendants' customers programming services and leased equipment that

rightfully belongs to DIRECTV, compromising DIRECTV's subscriber and

accounting systems, and interfering with DIRECTV's regulatory obligations and

contractual relationships.

87.   Defendants have violated O.C.G.A. § 46-5-2 willfully and for

purposes of commercial advantage or financial gain.

88.   Defendants knew or should have known that avoiding and assisting

others to avoid lawful charges, in whole or in part, for DIRECTV

telecommunication services is illegal and prohibited.  Such violations have caused

and will continue to cause DIRECTV irreparable harm, and DIRECV has no

adequate remedy at law to redress any such continued violations.  Unless restrained

by this Court, Defendants will continue to violate O.C.G.A. § 46-5-2.

## **THIRD CAUSE OF ACTION**

### **(Conversion – All Defendants)**

89.   Plaintiff DIRECTV repeats and realleges the allegations in all

preceding paragraphs as if set forth fully herein.

90.     By supplying DIRECTV Receivers, Access Cards and other satellite receiving equipment leased from DIRECTV to persons not authorized by DIRECTV, including Defendants' customers in the Bahamas, and engaging in other wrongful conduct alleged in this First Amended Complaint, Defendants have intentionally converted to their own use, and the use of Defendants' customers, property of DIRECTV over which DIRECTV retains ownership and the right to possession.

91.     The satellite television programming services that Defendants obtained from DIRECTV were subject to and conditioned upon the conditions set forth in the Commercial Customer Agreement and Commercial Viewing Agreement, including, but not limited to, the restriction that the services be used in the United States and nowhere else.  By supplying the leased equipment to persons not authorized to receive it, including Defendants' customers in the Bahamas, and engaging in other wrongful conduct alleged in this First Amended Complaint, Defendants have knowingly made a disposition of DIRECTV programming services in a manner inconsistent with DIRECTV's property rights.

92.     The satellite receiving equipment leased from DIRECTV was subject to the conditions set forth in the DIRECTV Equipment Lease Agreement, including, but not limited to, the customer's obligation to return the equipment to

DIRECTV upon cancellation or termination of their subscription accounts.  By supplying the leased equipment to persons not authorized to receive it, including Defendants' customers in the Bahamas, and engaging in other wrongful conduct alleged in this First Amended Complaint, Defendants have knowingly made a disposition of that leased equipment in a manner inconsistent with DIRECTV's property rights.

93.     In asserting dominion over the property of DIRECTV, Defendants have acted with actual malice and/or reckless disregard of DIRECTV's rights.

94.     As a direct and proximate result of Defendants' wrongful conduct, DIRECTV has suffered and continues to suffer damages, including, by way of example, depriving DIRECTV of television programming services and satellite receiving equipment that rightfully belong to DIRECTV, defrauding DIRECTV of equipment subsidies paid by DIRECTV to manufacturers of that equipment, and causing DIRECTV to incur investigative, legal and other expenses in attempting to secure the recovery of DIRECTV's property.

## FOURTH CAUSE OF ACTION

### (Breach of Contract – Authorized Dealer Defendants)

95.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

96.     As alleged herein above, the Authorized Dealer Defendants entered into Commercial Dealer Agreements with DIRECTV that, *inter alia*, authorized them to solicit subscriptions for DIRECTV's television programming services from qualifying commercial customers in the United States and nowhere else. Commercial Dealer Agreement, § 1.2(b) & Schedule 1.1, § 1.12.

97.     Additionally, corporate defendants MK Hospitality and Comptra entered into a Commercial Customer Referral Agreement with DIRECTV that, *inter alia*, authorized them to solicit subscriptions for DIRECTV's television programming services from qualifying commercial customers in the United States and nowhere else.  Commercial Customer Referral Agreement §§ 1.1, 2.3 & 2.9.

98.     The Commercial Dealer Agreement and the Commercial Customer Referral Agreement, as subsequently amended and modified, are enforceable contracts that confer legally enforceable rights to DIRECTV.

99.     By creating subscription accounts with false information and for improper purposes, activating DIRECTV satellite receiving equipment linked to those fraudulent accounts, exporting that activated equipment to the Bahamas, and marketing, distributing and selling purported DIRECTV programming in the Bahamas and other countries not authorized by DIRECTV, the Authorized Dealer Defendants have breached and are continuing to breach their obligations under

their Commercial Dealer Agreements and the Commercial Customer Referral Agreement with DIRECTV.

100.   DIRECTV has fully performed its obligations under the Commercial Dealer Agreement and the Commercial Customer Referral Agreement with the Authorized Dealer Defendants.

101.   As a direct and proximate result of the wrongful conduct by the Authorized Dealer Defendants, DIRECTV has suffered and continues to suffer damages, including compensatory, consequential and/or restitutionary damages, in an amount to be proven at trial.

102.   The Authorized Dealer Defendants knew or should have known that their conduct alleged herein violated the terms of the Commercial Dealer Agreement and the Commercial Customer Referral Agreement, and that they were in breach of their obligations thereunder.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV does not have an adequate remedy at law to redress such continued violations.  Unless restrained by this Court, the Authorized Dealer Defendants will continue to violate their contractual obligations to DIRECTV.

# **PRAYER FOR RELIEF**

WHEREFORE, plaintiff DIRECTV respectfully requests that this Court grant the following relief:

a.      Find that Defendants' conduct in creating DIRECTV subscription accounts with false subscriber information and for improper purposes, activating DIRECTV satellite receiving equipment linked to those fraudulent accounts, exporting that activated equipment to the Bahamas and other foreign countries, and marketing, distributing and selling purported DIRECTV programming in the Bahamas and other foreign countries violates 47 U.S.C. § 605(a), O.C.G.A. § 46-5-2 and state common law;

b.      Find further that Defendants' conduct breaches the obligations of the Authorized Dealer Defendants under the Commercial Dealer Agreement and the Commercial Customer Referral Agreement;

c.      Find further that Defendants' conduct was the intended and foreseeable result or consequence of Defendants' scheme to defraud DIRECTV;

d.      Find further that Defendants' violations of 47 U.S.C. § 605(a), O.C.G.A. § 46-5-2 and state common law were willful and malicious, for tortious or illegal purposes, and/or for purposes of direct or indirect commercial advantage or private commercial or financial gain;

41

e.       In accordance with 47 U.S.C. § 605(e)(3)(B)(i), O.C.G.A. § 46-5-2(b)(4) and state common law, and in accordance with the Commercial Dealer Agreement and the Commercial Customer Referral Agreement, enjoin and restrain Defendants, and persons or entities controlled directly or indirectly by Defendants, from creating DIRECTV subscription accounts with false subscriber information or for improper purposes, activating DIRECTV satellite receiving equipment linked to accounts created with false information or for improper purposes, exporting that activated equipment outside the United States, and marketing, distributing and selling purported DIRECTV programming to persons or businesses located outside the United States;

f.       In accordance with 47 U.S.C. § 605(e)(3)(B)(i), O.C.G.A. § 46-5-2(b)(4) and state common law, and in accordance with the Commercial Dealer Agreement and the Commercial Customer Referral Agreement, order Defendants to return to DIRECTV all Integrated Receivers/Decoders, Access Cards, and other hardware and software derived from or intended for the DIRECTV satellite system;

g.       In accordance with 47 U.S.C. § 605(e)(3)(C)(i) and (ii), award DIRECTV the greater of (1) actual damages suffered by DIRECTV and any profits

made by Defendants that are attributable to the violations alleged herein, or (2) statutory damages of up to $100,000 for each violation of 47 U.S.C. § 605(a);

h.       In accordance with O.C.G.A. § 46-5-2(b)(5), award DIRECTV the greater of (1) actual damages suffered by DIRECTV, which include the retail value of all telecommunication services to which Defendants and their customers had unauthorized access, and any profits made by Defendants as a result of the violations alleged herein, or (2) statutory damages of up to $10,000 for each violation;

i.       In accordance with O.C.G.A. § 46-5-2(b)(5)(C), award DIRECTV enhanced damages of up to $50,000 for each violation;

j.       In accordance with state law, award DIRECTV the value of DIRECTV property and services at the time of the conversion by Defendants, with interest from that time, and further award DIRECTV fair compensation for the time and money properly expended by DIRECTV in pursuit of the property;

k.       In accordance with 47 U.S.C. § 605(e)(3)(C)(i), O.C.G.A. § 46-5-2(b)(4) and state common law, and in accordance with the Commercial Dealer Agreement and the Commercial Customer Referral Agreement, declare that Defendants hold in trust, as constructive trustees for the benefit of DIRECTV, all

"profits" received by Defendants from their unauthorized reception and use of DIRECTV satellite television programming;

l.      In accordance with state law, award DIRECTV compensatory, consequential, and/or restitutionary damages, in an amount to be proven at trial;

m.      In accordance with state law, award restitution to DIRECTV in the amount that Defendants were unjustly enriched through their fraudulent conduct and/or conversion;

n.      In accordance with Georgia law, award DIRECTV exemplary and/or punitive damages;

o.      In accordance with 47 U.S.C. § 605(e)(3)(B)(iii), O.C.G.A. § 46-5-2(b)(4) and state common law, and in accordance with the Commercial Dealer Agreement and the Commercial Customer Referral Agreement, order Defendants to pay to DIRECTV all of its costs, reasonable attorneys' fees and investigative fees;

p.      Award DIRECTV pre-Complaint interest, and pre- and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law; and

q.      For such additional relief as the Court deems just and equitable.

DATED this __ day of March, 2016.

> Respectfully submitted,
>
> /s/ David L. Balser
> David L. Balser
> Georgia Bar No. 035835
> Claire C. Oates
> Georgia Bar No. 702045
> KING & SPALDING LLP
> 1180 Peachtree Street, N.E.
> Atlanta, Georgia 30309
> Telephone: (404) 572-4600
> Facsimile: (404) 572-5100
> dbalser@kslaw.com
> coates@kslaw.com
>
>
> /s/ Scott T. Wilsdon
> Scott T. Wilsdon (*pro hac vice*)
> Diana S. Breaux (*pro hac vice*)
> **YARMUTH WILSDON PLLC**
> 818 Stewart Street, Suite 1400
> Seattle, Washington 98101
> Telephone: (206) 516-3800
> Facsimile: (206) 516-3888
> wilsdon@yarmuth.com
> dbreaux@yarmuth.com
>
> *Attorneys for Plaintiff DIRECTV, LLC*