UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DIRECTV, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>MK HOSPITALITY, INC., et al.,<br><br>      Defendants. | No. 1:15-cv-02563-MHC |

**DIRECTV'S RESPONSE TO DEFENDANT SMITA SHERE'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff DIRECTV, LLC ("DIRECTV") respectfully submits this Response to Defendant Smita Shere's ("Shere") Motion for Summary Judgment (Docket 169). Shere's motion misconstrues DIRECTV's claims and ignores undisputed evidence that Star Satellites, while Shere was its sole owner and President, assisted others in the unauthorized reception of DIRECTV satellite television programming, in violation of the Federal Communications Act, 47 U.S.C. § 605(a), and O.C.G.A. § 46-5-2 . For purposes of Shere's motion, this undisputed evidence is more than sufficient to create a question of fact as to her liability.

# I. STATEMENT OF FACTS

## A. From 2007 Through 2012, Shere Was the Sole Owner and President of Star Satellites.

From 2005 through at least 2012, Shere was the President and sole owner of Star Satellites. Transcript of Deposition of Smita Shere ("Shere Tr.", Docket 171-5) 53:22-64:13-20.[1] In that capacity, she authorized her husband, co-Defendant Johny Thomas, to execute agreements with DIRECTV on her behalf by signing her name on the agreements. Shere Tr. 12:5-18. Pursuant to the agreements executed in Shere's name, Star Satellites became an Authorized DIRECTV Dealer. *See* Declaration of David Westlake In Support Of DIRECTV's Motion for Summary Judgment ("Westlake Decl."), Docket. 168-3, ¶¶ 28-29, Exs. 6-7.[2] Specifically, Shere authorized Thomas to execute an Independent Retailer Agreement, dated January 9, 2007, authorizing Star Satellites' sales of DIRECTV residential subscription accounts on the agreed terms (*id.* ¶ 28, Ex. 6); and a Commercial Dealer Agreement, dated March 3, 2011, authorizing Star Satellites' sales of

---

[1] As required by Section G of this Court's Standing Order (Docket 9), cited portions of deposition transcripts are attached as exhibits to the Declaration of Diana S. Breaux, and DIRECTV has separately filed electronic versions of the entire version of each cited transcript.

[2] DIRECTV submitted evidence relevant to the present Response in connection with Plaintiff DIRECTV's Motion for Partial Summary Judgment Against Defendants MK Hospitality, Inc., Luz Rios, Manish Karamshi, Star Satellites & Communications Inc., Johny Thomas, and Smita Shere ("DTV Motion," Docket 168-2), which DIRECTV incorporates by reference, as specifically cited herein.

DIRECTV commercial subscription accounts (*id.* ¶ 28, Ex. 7). Shere freely admitted that in having her husband execute the agreements on her behalf, she understood that she was assuming the obligations and duties under the contracts. Shere Tr. 12:12-18. Both agreements identify Shere as the "Owner/President" of Star Satellites. Westlake Decl., Ex. 6 at 17; Ex. 7 at 15. There is no evidence that Shere ever disclosed to DIRECTV that her husband signed her name on her behalf.

Both agreements executed on Shere's behalf restricted Star Satellites' sales of DIRECTV services to customers located in the United States and nowhere else. Westlake Decl., Ex. 6 (Independent Retailer Agreement) § 1.1(b)(ii) ("[Dealer] may market, promote, advertise and solicit the sale of Subscriptions, only for single family households in the United States."); Ex. 7 (Commercial Dealer Agreement) § 1.2(b)(ii) ("[Dealer] may market, promote, advertise and solicit the sale of DIRECTV Programming Packages, only for Commercial Establishments in the Territory"); *Id.*, Schedule 1.1, § 1.12 (defining "Territory" as "the United States and its territorial waters").

The agreements also required Star Satellites to verify, validate, and certify the accuracy of information furnished by Star Satellites to DIRECTV about each residential and commercial account it created. *Id.*, Ex. 6 § 2.11(c); Ex. 7 § 2.11(c). Additionally, Star Satellites was contractually required to have an employee

personally visit the location of record for each commercial account to verify the account information. *Id.*, Ex. 7, § 2.2(d).

Star Satellites received commission payments from DIRECTV for each residential and commercial subscription account created by Star Satellites. Westlake Decl. ¶ 73. Shere was a signatory on the Star Satellites business account to which DIRECTV deposited commission payments. Breaux Decl. ¶ 4, Ex. 4. Shere was a direct beneficiary of these commission payments and other funds received by Star Satellites. Shere Tr. 57:20-58:24, 59:5-8.

**B.** **While Shere Was the President and Sole Owner of Star Satellites, Star Satellites Created Fraudulent Accounts Used to Furnish DIRECTV Programming and Equipment in the Bahamas.**

As discussed in detail in DIRECTV's Motion for Partial Summary Judgment and the accompanying Declaration of David Westlake, beginning in approximately 2011, Star Satellites abused its position of trust with DIRECTV by creating at least 113 fraudulent commercial subscription accounts and at least 1 fraudulent residential subscription account. These accounts were used to activate DIRECTV satellite receiving equipment for use in the Bahamas, where DIRECTV is not licensed to sell and does not authorize the sale of its television programming services. *See* DTV Motion at 7-14; Westlake Decl. ¶¶ 63-70. The fraudulent Star Satellites commercial accounts included at least 97 accounts that listed billing addresses that matched post office boxes or other addresses belonging to Star

Satellites or co-Defendant MK Hospitality, Inc. Westlake Decl. ¶ 63. Other fraudulent commercial accounts were disclosed in documents produced by the Bahamas-based customers of Star Satellites, including Satellite Bahamas and former Defendant Sean Ian Davis, or linked by common account features to confirmed fraudulent accounts. *Id.* ¶¶ 65, 66. The fraudulent Star Satellites accounts were used to activate at least 2,291 DIRECTV receivers for DIRECTV programming service. *Id.* ¶ 67.

Through discovery in this case and DIRECTV's own investigative efforts, DIRECTV has amassed overwhelming evidence that the fraudulent Star Satellites accounts were used to assist others in the unauthorized reception of DIRECTV programming. Specifically, the accounts were used to procure and activate DIRECTV equipment and programming for sale in the Bahamas, where DIRECTV is not authorized to and does not sell programming. The evidence connecting the fraudulent Star Satellites accounts to customers in the Bahamas includes the following:

- A list of accounts used in the Bahamas by Star Satellites (produced in a prior lawsuit) included commercial accounts that had been created by Star Satellites. *Id.* ¶¶ 50 & 51, Ex. 12; *see also* Garraway Deposition Transcript ("Garraway Tr.") 41:2-42:9.

- Satellite Bahamas also produced order confirmations identifying Star Satellites as the dealer of record for fraudulent accounts used by Satellite Bahamas. *Id.* ¶ 52, Ex. 13.

5

- In spring and summer 2014, Satellite Bahamas returned DIRECTV receivers to the United States that included receivers that had been activated on commercial accounts created by Star Satellites. *Id.* ¶¶ 53 & 54, Ex. 14.

As is most relevant to Shere's Motion for Summary Judgment, at least 34 of the fraudulent accounts created by Star Satellites were created in 2011 and 2012, when Shere was the President and sole owner of Star Satellites. *See* Declaration of Diana S. Breaux In Support Of DIRECTV's Opposition To Shere's Motion For Summary Judgment ("Breaux Decl."), ¶ 1, Ex. 1.

## II. AUTHORITY AND ARGUMENT

Shere's motion for summary judgment must be denied if DIRECTV presents evidence that there is a material issue of fact on its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists to defeat Shere's motion, this Court must view the evidence in the light most favorable to DIRECTV, "and all justifiable inferences are to be drawn" in favor of DIRECTV. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). A fact is material if it can affect the outcome of the lawsuit under the governing legal principles. *Erebia v. Allstate Prop. & Cas. Ins. Co.*, No. 1:15-CV-312-MHC, 2016 WL 4536459, at *5 (N.D. Ga. Mar. 3, 2016) (citing *Anderson*, 477 U.S. at 248).

### A. There Is Ample Evidence to Create a Question of Fact as to Shere's Liability Under the Federal Communications Act, 47 U.S.C § 605(a).

Shere misunderstands the nature of DIRECTV's claim against her under the Federal Communications Act, 47 U.S.C. § 605(a) in two critical respects. *First*, Shere overlooks that DIRECTV's claim is based on her company, Star Satellites a former Authorized Dealer, having provided assistance to others in the unauthorized reception of DIRECTV satellite television programming, as expressly prohibited by sentence three of the Federal Communications Act, 47 U.S.C. § 605(a). *Second*, Shere misunderstands that the claim against her is based on her vicarious liability as sole owner and a corporate officer of Star Satellites for Star Satellites' conduct. As discussed below, the undisputed evidence that Star Satellites created fraudulent accounts used to furnish DIRECTV equipment and programming to customers in the Bahamas while Shere had both the ability to supervise and a financial interest in the activities is sufficient to raise a question of fact as to Shere's liability under the Communications Act.

#### 1. The Federal Communications Act, 47 U.S.C. § 605(a), Prohibits the Assistance of Others in the Unauthorized Reception of DIRECTV Satellite Programming.

DIRECTV's § 605(a) claim against Shere is based on Star Satellites' assistance of others in the unauthorized reception of DIRECTV satellite television programming. Such conduct is expressly prohibited by the third sentence of 47

U.S.C. § 605(a), which provides in full that, "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information contained therein) for his own benefit or for the benefit of another not entitled thereto."

As numerous courts have recognized, the unauthorized reception of DIRECTV satellite television programming is a violation of § 605(a). *See e.g., DIRECTV, LLC v. Shirah*, 2015 WL 1333966, * (S.D. Ga. March 24, 2015) (unauthorized commercial reception of satellite programming, even where programming had been received pursuant to residential subscription account, is a violation of § 605(a)); *see also J & J Sports Prods., Inc. v. Taqueria Jalisco, Inc.*, 491 Fed. App'x 962, 962 (11th Cir. 2012) (same).

Shere is simply wrong that liability under § 605(a) requires that she "intercept" DIRECTV satellite programming. Shere Motion at 6. Her liability is premised on her company's assistance in the unauthorized reception of DIRECTV programming. As numerous courts have recognized, the third sentence of Section 605(a) does not on its face require interception. *See Dish Network L.L.C. v. World Cable, Inc.*, 893 F. Supp. 2d 452, 472-73 (E.D.N.Y. 2012) (citing and analyzing cases and noting the "vast majority" of courts to consider the issue have found sentence three does not require interception); *DIRECTV, LLC v. Perugini*, 28 F. Supp. 3d 351, 355 (W.D. Pa. June 20, 2014) ("*no interception is required*" under

8

the third sentence of § 605(a)) (emphasis supplied); *see also Joe Hand Promotions, Inc. v. That Place, LLC*, No. 11-CV-931, 2012 WL 2525653, *3 (E.D. Wisc. June 29, 2012) ("[T]he first and third sentences of § 605(a) do not . . . require an 'interception'.")

To the extent there is an "interception" requirement for purposes of sentence three, it is synonymous with "reception." *General Instrument Corp. of Delaware v. Nu-Tek*, 93-CV-3854, 1996 WL 402511, at *3 n.1 (E.D. Pa. Apr. 12, 1996) (for purposes of sentence three "reception and interception appear to be essentially tantamount"); *see also J & J Sports Prods., Inc. v. Martinez*, No. 13-6885, 2014 WL 5410199, *4 (E.D. Pa. Oct. 23, 2014) (unauthorized broadcast satisfied claim elements including "intercept[ion of] a broadcast").

### 2. The Undisputed Evidence Creates a Question of Fact as to Shere's Liability Under § 605(a).

The overwhelming evidence that Star Satellites created fraudulent commercial and residential DIRECTV subscription accounts that were used to assist and facilitate the unauthorized reception of DIRECTV satellite television programming by customers in the Bahamas, where DIRECTV is not licensed to and does not authorize receipt of its programming, is more than adequate to raise a question of material fact as to Shere's liability under § 605(a) as a sole owner and a corporate officer of Star Satellites.

As summarized above and detailed in DIRECTV's Motion for Partial Summary and the Westlake Declaration, the evidence that Star Satellites assisted in the unauthorized reception of DIRECTV satellite programming in the Bahamas by creating fraudulent commercial and residential subscription accounts is overwhelming. The evidence includes documents produced by Satellite Bahamas, Star Satellites' customer in the Bahamas, identifying Star Satellites as the dealer of record for accounts used in the Bahamas (Westlake Decl. ¶¶ 50-52, Exs. 12-13); DIRECTV's investigative findings confirming the fraudulent nature of the accounts (Westlake Decl. ¶¶ 63-70); and equipment returned by Satellite Bahamas, which DIRECTV confirmed had been activated on accounts created by Star Satellites (Westlake Decl. ¶¶ 53-54, Ex. 14).

Under applicable Eleventh Circuit standards, as a corporate officer, Shere is variously liable for Star Satellites' violations of § 605(a) if she (1) "had a right and ability to supervise the violations," and (2) "had a strong financial interest in such activities." *Joe Hand Promotions, Inc. v. Watley*, No. 4:12-CV-129 CDL, 2013 WL 3338849, at *3 (M.D. Ga. July 2, 2013); *see also J & J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009) (citing *J & J Sports Productions, Inc. v. Ribeiro,* 562 F.Supp.2d 498, 501 (S.D.N.Y.2008)).

      **a.**    **The DIRECTV Authorized Dealer Agreements Executed in Shere's Name Provide Ample Evidence that Shere Had a Right and Ability to Supervise Star Satellite's Violations.**

Shere seeks to disclaim any involvement in Star Satellites through her bare affidavit, supported by only her own say-so, that was merely a "passive owner" and "not personally involved" in the company's "day to day operations." Affidavit in Support of Motion for Summary Judgment for Defendant Smita Shere. (Docket 177). Shere's disavowal of any involvement in Star Satellites' business is belied by the Authorized Dealer Agreements executed with her approval and in her name and DIRECTV records confirming she was the identified contact of record on fraudulent accounts. Most importantly for purposes of this motion, because Shere, as sole owner and President of Star Satellites and the signatory to the Authorized Dealer Agreements, had the right and ability to supervise the violations and admitted financial interest in doing so, her disavowal of involvement in the company is an insufficient basis for this Court to grant her motion for summary judgment.

The contractual duties Shere assumed under the DIRECTV Authorized Dealer Agreements are more than sufficient to create a question of fact as to whether Shere had the right and ability to supervise her company's creation of fraudulent DIRECTV subscription accounts. As discussed *supra*, Star Satellites was a DIRECTV Authorized Dealer pursuant to agreements executed on Shere's behalf. Westlake Decl., Exs. 6-7. Those agreements conferred upon Shere, as the signatory to the contracts and the sole owner and President of Star Satellites,

obligations to—among other responsibilities—verify the accuracy of account information furnished to DIRECTV and also to limit sales to qualifying customers in the United States and no other else. Westlake Decl., Ex. 6 (Independent Retailer Agreement) §§ 1.1(b)(ii), 2.11(c); Ex. 7 (Commercial Dealer Agreement) §§ 10.2. 1.2(b)(ii), 2.11(c). These duties were not assignable. Westlake Decl., Ex. 6 (Independent Retailer Agreement) §10.2, Ex. 7 (Commercial Dealer Agreement) §10.2. In executing the agreements, Shere also represented to DIRECTV that Star Satellites "ha[d] the full right, power and authority to execute, deliver and perform" the Independent Retailer Agreement and Commercial Dealer Agreement. *See* Westlake Decl., Ex. 6 § 18.6; Ex. 7 § 18.6.

That Shere, as sole owner and President of Star Satellites, undertook non-assignable obligations with respect to DIRECTV residential and commercial subscription accounts created by Star Satellites at a minimum creates a question of fact as to whether she had the ability to supervise Star Satellites' creation of the accounts at issues in this lawsuit.

Moreover, while Shere disclaims any involvement in Star Satellites' business, her name appears on account records related to the fraudulent accounts. For example, on May 16, 2013, DIRECTV's customer service office emailed Star Satellites regarding a customer complaint received with respect to account number

58397523, one of the confirmed fraudulent accounts. Breaux Decl., Ex. 5. The response came from an email address identified as "Smita Shere." *Id.*

### b. Shere Admits She Was the Beneficiary of Commissions Paid on the Fraudulent Accounts.

As noted *supra* Section I.A, Star Satellites received commissions from DIRECTV for every subscription account it created, including the fraudulent accounts. Westlake Decl. ¶ 73. Star Satellites received at least $66,653.52 in commissions from DIRECTV for the fraudulent accounts. Shere admitted she was the beneficiary of commissions received on the fraudulent accounts. Shere Tr. 57:20-58:24, 59:5-8. Records obtained from third-party discovery confirm that as late as August 21, 2014, Shere was a signatory on Star Satellites' business checking account with J.P. Morgan Chase Bank. *See* Breaux Decl. ¶ 3, Ex. 3.[3]

That Shere was the direct beneficiary of funds received from Star Satellites' fraudulent activities is more than sufficient to create a question of fact that she had the requisite "financial interest" to be vicariously liable under § 605(a).

Indeed, the undisputed evidence that Shere had both the right and ability to supervise Star Satellites' violations and a financial interest in those activities is more than adequate not just to deny Shere's motion, but also warrants granting

---

[3] Account records for the Star Satellites' business account show that Shere received payments from Star Satellites (by way of checks she signed) in 2011, 2012, and 2014. Breaux Decl., Ex. 3. (DTV-MK-CB-000070, 127, 328, 363-64)

13

DIRECTV's affirmative Motion for Partial Summary Judgment against Shere on this claim. *See* DTV Motion at 19-20.

**B.   Because O.C.G.A. §46-5-2 Is Parallel to the Federal Communications Act, Shere's Motion for Summary Judgment on that Claim Must Be Denied As Well.**

Georgia's state theft of telecommunications services statute, O.C.G.A. §46-5-2 is "parallel in substance and form to the FCA." *See DIRECTV, Inc. v. Wright*, 350 F. Supp. 1048, 1054 (N.D. Ga. 2004). The foregoing legal standards applicable to DIRECTV's § 605(a) claim thus also govern DIRECTV's claim under O.C.G.A. § 46-5-2, and likewise warrant denial of Shere's Motion for Summary Judgment on that claim.

**C.   DIRECTV's Breach of Contract and Conversion Claims Are Directed to the Corporation, Star Satellites, Not Shere in Her Personal Capacity.**

DIRECTV's Breach of Contract claim is directed to Star Satellites, the counterparty to the Authorized DIRECTV Dealer Agreements, not Shere. Likewise, DIRECTV's Conversion claim is directed to the corporate entity to which Receivers are leased. To the extent DIRECTV's Complaint is construed as raising a Conversion claim against Shere, DIRECTV withdraws that claim.

## III. CONCLUSION

Based on the foregoing, DIRECTV respectfully requests that this Court deny Shere's Motion for Summary Judgment with respect to DIRECTV's § 605(a) and O.C.G.A. § 46-5-2 claims, and further grant DIRECTV's Motion for Partial Summary Judgment Against Shere on DIRECTV's § 605(a) claim. As for that aspect of Shere's Motion directed to DIRECTV's Conversion claim, DIRECTV stipulates to dismissal of that claim.

Dated: December 21, 2016.

       *s/ Diana S. Breaux*
Scott T. Wilsdon (*pro hac vice*)
Diana S. Breaux (*pro hac vice*)
YARMUTH WILSDON PLLC
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
Telephone: (206) 516-3800
wilsdon@yarmuth.com
dbreaux@yarmuth.com

David L. Balser
Georgia Bar No. 035835
Danielle Chattin
Georgia Bar No. 486940
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
dbalser@kslaw.com
dchattin@kslaw.com

*Attorneys for Plaintiff DIRECTV, LLC*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).

Respectfully submitted this 21st day of December, 2016.

                                          *s/ Diana S. Breaux*
                                          Diana S. Breaux

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of December 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

I further caused a true and correct copy of the foregoing document to be served upon the following defendant by U.S. Mail:

Sujit Ghosh
613 White Plains Road
Eastchester, NY 10709

Uday Saha
6415 229th Street
Bayside, NY 11364

Open Orbit Corp
6415 229th Street
Bayside, NY 11364

Dated this 21st day of December, 2016.

                                              *s/ Diana S. Breaux*
                                              Diana S. Breaux